UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CHI WAI SHUM, on behalf of himself and others : 
similarly situated,                                             :
                                                                :        **SUPPLEMENTAL**
                                                                :        **REPORT AND**
                          Plaintiff,                            :        **RECOMMENDATION**
                                                                :
            -against-                                           :        17 Civ. 7600 (RPK) (VMS)
                                                                :
JILI INC. d/b/a JIN CHENG RESTAURANT;     :
RONG XING INC. d/b/a JIN CHENG               :
RESTAURANT; XIAO DONG HUANG, JIALI  :
WANG a/k/a LILY WANG, CHUN KIT              :
CHENG, WEI WEI LIN,                                 :
                                                                :
                                                                :
                          Defendants.[1]                       :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Chi Wai Shum ("Plaintiff"), on behalf of himself and others similarly situated,

brought this wage-and-hour action against Defendants Jili Inc., d/b/a Jin Cheng Restaurant; Rong

Xing Inc., d/b/a Jin Cheng Restaurant; Xiao Dong Huang; Jiali Wang; Chun Kit Cheng; and Wei

Wei Lin (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL") §§ 650 et seq. See ECF No. 44,

passim. Before the Court is Plaintiff's motion for a default judgment against Defendants Cheng

and Wang, who have not appeared. See ECF No. 87. On January 31, 2023, the undersigned

issued a report and recommendation with respect to the motion for a default judgment. See ECF

No. 108. I now issue this supplemental report and recommendation as to whether the motion for

---

[1] The Court uses the caption from the Third Amended Complaint upon which the default judgment motion is made, although this caption does not have the same order of the parties as on the docket. This caption includes Xiao Dong Huang, whom the District Court has dismissed from the action. See ECF Nos. 104, 107. The caption is styled as one for a class and collective action, but Plaintiff has not moved for relief for anyone other than himself.

1

a default judgment should be granted with respect to Plaintiff's federal claims, as the Court has conducted an inquest to assess Plaintiff's allegations as to damages.

For the following reasons, I respectfully recommend that, if the District Court determines to resolve the outstanding federal claims at this time, the motion for a default judgment be denied with respect to all of Plaintiff's federal claims against the non-appearing Defendants, and that the Court dismiss the federal claims with prejudice. I respectfully recommend that Plaintiff be denied leave to replead his complaint as to the federal claims. I respectfully recommend that Plaintiff's motion for attorney's fees and costs under the FLSA at ECF Nos. 113-115 be denied because Plaintiff is not a prevailing plaintiff entitled to fees or costs on the motion for a default judgment under the FLSA.

If the federal claims were dismissed, Plaintiff's only remaining claims would be those that arise under New York State law. I respectfully recommend that the District Court enter an order to show cause for the parties to show cause as to why the District Court should not decline to exercise supplemental jurisdiction over the remaining state law claims and why the action should not be dismissed without prejudice for want of subject matter jurisdiction.[2]

I respectfully recommend that if the District Court agrees that Plaintiff's motion for a default judgment should be denied and the federal claims should be dismissed, the initial report and recommendation at ECF No. 108 be marked as withdrawn as moot in light of the resolution of the federal claims before the Court.

---

[2] Should the District Court issue an order to show cause as to jurisdiction, it may wish to administratively close the portion of the default judgment motion that relates to the state law claims until the District Court decides whether to retain or to decline to exercise supplemental jurisdiction. If the District Court retains jurisdiction over this action, the Court respectfully requests that the District Court re-refer the motion for a default judgment for the Court to prepare a report and recommendation as to the state law claims against the non-appearing Defendants.

I.      **Background**

The Court summarizes the relevant procedural and factual information relating to the federal claims only.  To the extent that the District Court requires further background, the District Court is respectfully referred to the January 31, 2023 report and recommendation.  ECF No. 108.  The Court notes that Plaintiff still has not shown compliance with Local Civil Rule 55.2, despite more than six weeks having passed since the Court issued its January 2023 report and recommendation.  ECF No. 108 at 6-7.

a.   **Plaintiff's Allegations In Support Of His Federal Claims**

Plaintiff commenced the instant action.  ECF No. 1 (January 8, 2018).  Plaintiff filed an amended complaint, ECF No. 18 (July 1, 2018); a second amended complaint, ECF No. 26 (November 13, 2018); and a third amended complaint, ECF No. 44 (July 25, 2019).  The following facts are drawn from the docket and Plaintiff's third amended complaint.  ECF No. 44.

Defendant Rong Xing Inc. is a restaurant business.  Id. ¶ 11.  Plaintiff alleges that, "[u]pon information and belief, RONG XING INC., d/b/a Jin Cheng[,] is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year."  Id. ¶ 13.  Plaintiff also alleges that, "[u]pon information and belief, RONG XING INC., d/b/a Jin Cheng[,] purchased and handled goods moved in interstate commerce."  Id. ¶ 14.  Plaintiff claims that the individual Defendant Jiali Wang is an owner and manager of the business.  Id. ¶ 16.  Plaintiff claims that individual Defendant Chun Kit Cheng is the husband or boyfriend of Ms. Wang, acted as a manager of the business and had "hired and fired multiple dishwashers at the Jin Cheng Restaurant."  Id. ¶¶ 22-23.

Plaintiff was employed as a waiter for Defendants at Jin Cheng Restaurant in Flushing, New York from July 6, 2011 to October 15, 2017.  Id. ¶ 51.  The federal minimum wage during

3

Plaintiff's employment was $7.25 per hour.  Id. ¶ 72.  Defendants deducted a tip credit from

Plaintiff's wages.  Id. ¶¶ 64-69.  Plaintiff's wages were as follows:

| Date | Tip Credit | Plaintiff's Hourly Wage | Plaintiff's Net Hourly Wage[3] |
|---|---|---|---|
| 7/6/11-12/30/13 | $2.25 | $7.25 | $5.00 |
| 12/31/13-12/30/14 | $3.00[4] | $8.00 | $5.00 |
| 12/31/14-12/30/15 | $3.75 | $8.75 | $5.00 |
| 12/31/15-12/30/16 | $1.50 | $9.00 | $7.50 |
| 12/31/16-6/3/17 | $3.50 | $11.00 | $7.50 |

Id. ¶¶ 64-69.  Plaintiff's net hourly wage was below the federal minimum wage only from July

2011 through December 2015.[5]  ECF No. 44 ¶ 72, 74.

When hired on July 6, 2011, Plaintiff was given written notice of his wage rate and of the

tip credit and meal credit his employer would take, but he "was not given written notice of his

---

[3] Plaintiff also alleges that in the complaint that his effective wage was even lower because of the daily $2.50 credit Defendants took for providing a meal to Plaintiff.  ECF No. 44 ¶¶ 64-68.  His meal credit argument seems to be primarily that he should not have had to pay a credit for meals because he "did not eat any of [the] meals [the] employer offered."  Id. ¶ 58.

[4] Some of these tip credit amounts may have violated the NYLL, but this report and recommendation does not consider Plaintiff's New York claims.  Under the NYLL, as of January 1, 2011 through December 31, 2016, employers could only take a tip credit of up to $2.25.  See Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 240 (2d Cir. 2011) (citing historic N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3 (effective Jan. 1, 2011) ("Tip credits"); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3.

[5] As discussed at Section III(a), infra, Plaintiff's statute of limitations for the FLSA only extends back to January 8, 2015, so Plaintiff only has a potentially viable minimum wage claim for January 8, 2015 through December 30, 2015.

wage increases or what the tip credits that would be applied to his increased wages would be."[6]

Id. ¶¶ 70-71.[7]  Plaintiff also alleged that "[b]ecause Defendants did not give Plaintiff such

written notice, Defendants were not entitled to claim a tip credit against Plaintiff's wages after

December 30, 2013."  Id. ¶ 71.  Plaintiff did not dispute the adequacy of the 2011 tip notice

under the FLSA, but rather, that additional notices should have been issued when Plaintiff's

wages were increased.

At the restaurant, tips were pooled among the waitstaff and distributed by Defendants

among approximately ten employees.  Id. ¶¶ 76-84.  Tips were distributed based on seniority,

with more senior staff receiving larger shares of the tip pool.  Id. ¶¶ 78-79.  One of the tip pool

participants was a busboy.  Id.  ¶¶ 80-82.  Defendants retained the busboy's share of the tip pool,

and, instead, paid the busboy a flat rate of $600 per week, regardless of how much the dollar

amount of busboy's tip pool share was.  Id. ¶¶ 83-84.

### b.  Plaintiff's Deposition Testimony Offered In The Summary Judgment Motion Practice

During discovery, Rong Xing Inc. deposed Plaintiff.  ECF No. 69-11, 69-12.  Of

relevance to the federal claims against the non-appearing Defendants was the following

testimony:

---

[6] During summary judgment motion practice, Plaintiff's opposition to the motion included a declaration by his attorney that attached copies of the July 2011 and three other wage notices. ECF No. 69 (Schweitzer Decl.), Exhibits 3 and 7.

[7] Plaintiff made a similar allegation relating to the putative collective action plaintiffs: "Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday after each change in their wage rate."  ECF No. 44 ¶ 48.  Plaintiff did not make any allegations as to the sufficiency of the tip notice under the FLSA, but, rather, complained about the issuance of notices that he claims should have been issued after the time of hire, when and if an employee's wages changed.

5

Ms. Wang set Plaintiff's schedule, set Plaintiff's pay, arranged the tip pool and maintained employee records.  ECF No. 69-11 at 32:19-33:17; 69:24-70:16; ECF No. 69-12 at 179:3-11.  Plaintiff had seen Mr. Cheng fire a dishwasher on one occasion.  ECF No. 69-11 at 27:12-28:19.

Plaintiff signed a time-of-hire notice when he was first hired.  ECF No. 69-11 at 48:9-15.  Plaintiff recalled that the time-of-hire notice notified him that his employer would take a tip credit against his wages.  Id. at 50:21-25; see ECF No. 69-12 at 173:13-19; 174:2-9.  Plaintiff testified that he had received notice of the tip credit "three times" after 2012 and signed the three notices.  ECF No. 69-11 at 104:21-105:9, 138:4-20.[8]  Plaintiff testified that he had never told his attorneys that he "did not receive adequate notice that Rong Xing would be claiming the tip credit against [his] wages."  ECF No. 69-12 at 186:24-187:4.  He also confirmed that, at the time of his hire notice, Rong Xing Inc. told him that Rong Xing Inc. would be claiming a tip credit against his wages.[9]  Id. at 187:16-20.  He testified that all of the wage statements and pay stubs that he received informed him that the restaurant was taking a tip credit against his wages.  Id. at 187:21-25.  Plaintiff acknowledged that the restaurant had posted wage posters on the wall near the cashier and entrance.  ECF No. 69-11 at 140:21-141:10.  Plaintiff acknowledged that he always received his share of the tip pool.  ECF No. 69-12 at 172:14-173:2.

Plaintiff testified that the busboy's tip share "was distributed," but that he had "never seen [the busboy] take his tips."  ECF No. 69-11 at 100:12-16.  Plaintiff had no personal

---

[8] Plaintiff also testified that he had signed three separate "papers" but that he did not remember the time period.  ECF No. 69-11 at 54:2-6.

[9] Immediately thereafter during the deposition, Plaintiff said that Rong Xing Inc. had never told him that the restaurant would be claiming tip credits against his wages.  ECF No. 69-12 at 188:2-8.  There is no explanation offered for the inconsistency with his immediately prior testimony.

knowledge about how much the busboy was paid, and he had never seen the busboy's wage statements.  ECF No. 69-11 at 97:10-98:2.  He testified that after the tips had been divided, the busboy's tips were attached to a note and left with the cashier.  Id. at 100:6-11.  When asked by Rong Xing Inc.'s counsel what the busboy's share of the tip pool was, Plaintiff stated that "for every hundred dollar[s] [the busboy] gets sixty-five hours," without elaboration.  Id. at 98:3-8.  When asked how he knew the busboy's tip share, Plaintiff responded that "everyone knew about that."  Id. at 98:9-13.  On cross-examination, when asked if, "for all your hours worked, you shared in the tip pool," Plaintiff answered "Yes."  ECF No. 69-12 at 172:21-173:2.  Plaintiff confirmed that, other than with gathering the busboy's tips, Ms. Wang did not participate in the distribution of tips to the staff.  Id. at 181:8-182:5.  Plaintiff alleged that "Ben," identified as a manager, also participated in the tip pool.  ECF No. 69-11 at 94:8-19.  Plaintiff claimed that "Ben" was involved in "PR" and would occasionally have contact with and serve customers.  Id. at 94:20-24.

When asked if Plaintiff ate meals provided by Defendants, Plaintiff claimed that he ate "[m]ore than 50 meals" over the course of his employment.  ECF No. 69-12 at 191:21-23.  Plaintiff acknowledged that the document that he received when he was hired informed him that the restaurant would take a credit of $2.50 per meal.  Id. at 175:13-20.

As to the operation of the restaurant as either JILI Inc. or Rong Xing Inc., Plaintiff testified that he had not provided his attorneys with and that he was not asked about any of the following information: how much the restaurant made in gross sales each year and whether the restaurant was engaged in or "gained in interstate commerce."  Id. at 165:4-17, 166:11-24.

Defendant Rong Xing Inc. moved for summary judgment.  See ECF No. 63.  Plaintiff offered the transcript of his deposition in opposition to the Rong Xing Inc. motion, ECF Nos. 69-

11, 69-12, as well as other evidence.  The District Court granted summary judgment for Rong

Xing Inc. on all counts, save for the NYLL spread-of-hours claim and the NYLL failure-to-

provide-paystubs claim.  ECF Dkt. Entry 3/24/2021 Minute Entry and Order.  As to Plaintiff's

claim that Ms. Wang misappropriated the busboy's share of the tip pool, the District Court

concluded that "[P]laintiff d[id] not actually know" that the busboy "never collected his tips and

there's no other evidence to suggest that [the busboy] never collected his tips."[10]  ECF Dkt Entry

3/24/2021 Minute Entry and Order (Tr.) at 9:9-12.  As to the claim that "Ben" had participated in

the tip pool, the Court denied this claim because it was not contained within the third amended

complaint.  Id. at 9:18-10:3.

### c. Plaintiff's Testimony And Exhibits Offered During The Damages Inquest

This Court issued an Order scheduling an inquest on Plaintiff's damages, attorney's fees

and costs for Plaintiff's federal claims against defaulting Defendants Cheng and Wang.  ECF

Dkt. Entry 2/14/2023 Order.  Plaintiff, his attorney and an interpreter were directed to appear;

counsel for appearing Defendant Rong Xing Inc. was permitted to attend but was not required to

do so.  Id.  Defaulting Defendants were mailed notice of the hearing and were invited to attend

and present evidence and testimony.[11]  Id.  Plaintiff, Plaintiff's counsel, a Cantonese interpreter,

and counsel for Rong Xing Inc. appeared; Ms. Wang and Mr. Cheng did not appear.  ECF Dkt.

Entry 2/22/2023 Minute Entry.

---

[10] In making this conclusion, the District Court relied on Plaintiff's deposition, in which Plaintiff testified that the busboy's tip share "was distributed," but that he had "never seen [the busboy] take his tips."  ECF Dkt Entry 3/24/2021 Minute Entry and Order (Tr.) at 5; ECF No. 69-11 at 100:12-16.  The District Court noted that this allegation was the only proof offered by Plaintiff to show the busboy did not receive his tip pool share.  ECF Dkt Entry 3/24/2021 Minute Entry and Order (Tr.) at 9.

[11] On or about March 15, 2023, the Court's mailings to the non-appearing Defendants were returned as undeliverable.  ECF No. 116.

### i. Documentary Evidence Offered

Plaintiff entered the following exhibits into evidence during the inquest: (1) a photograph of Ms. Wang at the Jin Cheng Restaurant ("Exhibit 1"); (2) wage notices issued to and signed by Plaintiff, which informed Plaintiff of his ordinary payrate, overtime payrate, and allowances taken for tips and meals, dated July 6, 2011; February 1, 2015; January 1, 2016; and January 1, 2017 ("Exhibit 2"); (3) timesheets showing Plaintiff's clock-in and clock-out times, including lunch breaks, from February 2015 to October 2017 ("Exhibit 3"); (4) Plaintiff's paystubs from February 2015 to October 2017 ("Exhibit 4"); and (5) Plaintiff's wage statements from February 2015 to October 2017 ("Exhibit 5"). Of relevance to the federal claims was that the July 2011 notice listed Plaintiff's employer as JILI Inc., doing business as Jin Cheng Restaurant; the subsequent notices from 2015 to 2017 list Rong Xing Inc. as Plaintiff's employer. The notices in Exhibit 2, paystubs in Exhibits 4 and wage statements in Exhibit 5 stated that a tip credit was taken from Plaintiff's pay.

### ii. Plaintiff's Testimony

After taking an oath to testify truthfully, Plaintiff testified in response to his counsel's questions as follows. ECF No. 111 at 9:7. Plaintiff was employed by Jin Cheng Restaurant from July 6, 2011 to October 15, 2017. Id. at 9:19-10:4. Plaintiff was hired by Ms. Wang, who interviewed job applicants and "hire[d] everyone" at Jin Cheng Restaurant. Id. at 10:5-9, 17:7-19.

Plaintiff gave conflicting testimony about his supervisors at Jin Cheng Restaurant. When asked questions by his counsel, Plaintiff stated that both Ms. Wang and Mr. Cheng "supervised employees in the front" of the restaurant. Id. at 19:19-20:11. Plaintiff explained that the "front" of the restaurant referred to the dining area, in which he worked as a waiter. Id. at 20:25-21:8.

9

Plaintiff also testified that Mr. Cheng supervised the "back," meaning the restaurant's kitchen. Id. at 20:19-20, 21:3-5. When the Court asked Plaintiff who supervised him during his work in the dining area, Plaintiff responded that Ms. Wang supervised him during his entire tenure at Jin Cheng Restaurant. Id. at 21:9-10, 21:20-22:2. Plaintiff stated that Ms. Wang's responsibilities included "making all the schedules for the worker[s]." Id. at 22:10-14. Plaintiff testified that Ms. Wang was responsible for passing out pay to employees, and for setting Plaintiff's work schedule. Id. at 24:10-14, 45:21-22.

When the Court asked if Mr. Cheng also supervised Plaintiff, Plaintiff responded that he did. Id. at 22:3-5. Plaintiff stated that Mr. Cheng was "responsible for kitchen . . . hiring" and would occasionally help "manage the front" when the restaurant was busy by "tak[ing] care of the customer[s], tak[ing] care of the register . . . and also mak[ing] supply purchases." Id. at 22:15-23:6, 23:10-19. The Court asked Plaintiff if Mr. Cheng "supervise[d] the workers in [the] front" of the restaurant in which Plaintiff worked; Plaintiff answered "[n]o." Id. at 23:7-9. In response to his counsel's question about whether Plaintiff ever saw Mr. Cheng fire an employee, Plaintiff responded that Mr. Cheng had fired "the dishwasher," without elaboration. Id. at 24:3-8.

Plaintiff testified about the contents of Exhibits 2, 3, 4 and 5, focusing on the information about Plaintiff's wage and tip credit deduction. Id. at 17:1-6, 26:18-32:11, 46:23-47:10, 52:20-60:1. Plaintiff testified that, prior to February 2015, he did not receive timesheets. Id. at 31:13-16. Between July 2011 and February 2015, Plaintiff did not receive written notice that his pay and tip credit changed over the years. Id. at 32:4-11.

Jin Cheng Restaurant distributed tips via a tip pool. Id. at 32:12-16. In response to questioning by his counsel, Plaintiff stated that Ms. Wang "participated" in the tip pool. Id. at

32:17-18.  When asked by the Court which employees had participated in the tip pool, Plaintiff stated that the tip pool involved "[a]ll the servers at the dining area," id. at 32:17-33:1, and that, "[o]n average" there were ten participating servers, id. at 33:2-33:9.  The tip pool would be distributed by taking the total sum of tips and dividing the total by the number of participating employees, which would give an average tip allotment.  Id. 34:21-35:4.  The average tip allotment would then be increased or decreased based upon an employee's position, "the ability of the workers" and "employee quality."  Id. at 33:12-16.  The range of distributed tips that employees received was "[f]rom 60 percent to 120 percent" of an average tip allotment.  Id. at 33:17-19.  The "busboy g[ot] 60 percent; the wait staff, 80 to 100 percent; managers, 120 percent" of a single share.  Id. at 34:16-17.  Ms. Wang decided the percentage each employee was allocated from the tip pool.  Id. at 39:5-7.  Plaintiff testified that, to his knowledge, Ms. Wang did not keep records of the tips or their distribution to the employees.  Id. at 50:15-51:2.

Plaintiff always received 100 percent of the average tip allotment, and he always received the full share that he was owed.  Id. at 35:8-14, 41:16-23.

Plaintiff testified about the "managers" and their alleged participation in the tip pool. The "managers"[12] who had participated in the tip pool were not Ms. Wang or Mr. Cheng, whom Plaintiff had claimed were managers, but, rather, were unnamed employees who "help[ed] . . . with the customer[s]" by "tak[ing] orders," by "greeting customers," by "maintain[ing] and check[ing] the quality of the meals" or by organizing "the menu for . . . wedding parties."  Id. at 38:7-13, 39:21-40:6.  Plaintiff confirmed that these purported managers (other than Ms. Wang)

---

[12] The testimony was unclear as to whether there was one or more than one "manager" other than Ms. Wang who Plaintiff claimed had improperly participated in the tip pool.  On the one hand, Plaintiff described "managers" in the plural, ECF No. 111 at 37:23, 38:7-13, but, on the other hand, he testified about one person, who had served as maître d', id. at 39:15-20.

11

did not have the power to hire or fire employees.  Id. at 40:7-9.  When asked by the Court to clarify whether the "manager[s]" were actually the "maître d' for the restaurant," Plaintiff replied that they were.  Id. at 39:2-4.  When asked by counsel to describe other responsibilities of the managers, Plaintiff responded that they "served to help [Ms.] Wang" and would tell Plaintiff "to go to a particular section of the dining area to work."  Id. at 42:3-19.  In response to the Court asking if the managers gave "any other directions other than . . . the work and food flow," Plaintiff replied that "basically that's it."  Id. at 45:23-46:2.

As to the busboy's tips, Plaintiff testified that Ms. Wang would direct the dining area staff to take 60 percent of one average tip allotment and "put it in a drawer."  Id. at 41:1-15.  Ms. Wang would "supposedly" give a flat amount of $600 to the busboy on a weekly basis, regardless of how much the busboy was owed from the tip pool.  Id. at 35:25-36:5, 40:17-24.

Jin Cheng Restaurant offered Plaintiff meals during his shifts.  ECF No. 111 at 42:20-22.  Plaintiff "receive[d]" these meals, but he did not eat them.  Id. at 42:20-43:6.  On his first day of work, Ms. Wang saw that Plaintiff had brought his own meal; Plaintiff informed Ms. Wang that he was allergic to MSG and would not eat the provided employee meals.  Id. at 44:2-21.  Plaintiff confirmed that the information included in Exhibits 4 and 5 was correct, and that he had the opportunity to review the information at the time it was made and correct any mistakes.  Id. at 52:23-53:10, 54:1-9, 57:21-58:9.  During the inquest, Plaintiff offered Exhibits 4 and 5 which note a meal credit, but they also show that the restaurant did not deduct the meal credit from Plaintiff's wages.  Plaintiff was unable to explain why Exhibits 4 and 5 reported that the meal credit was not deducted from Plaintiff's pay.  Id. at 54:1-55:11.  The Court asked Plaintiff if, at any point, his employers had "charge[d] [Plaintiff] for or take[n] a credit for meals that were provided to [Plaintiff] at the restaurant."  Id. at 88:18-20.  Plaintiff responded, "I actually don't

know." Id. at 88:21.  On cross-examination, counsel for Rong Xing Inc. asked Plaintiff if he would agree that "the employer did provide meals" to Plaintiff despite Plaintiff's claim that he "didn't eat any of them"; Plaintiff agreed.  Id. at 94:12-15.  When asked by counsel for Rong Xing Inc. if a meal credit was deducted from Plaintiff's wages between 2011 and January 2015, Plaintiff was unable to answer.  Id. at 102:6-8.  When asked by Plaintiff's counsel and the Court if the meal credit was deducted from his wages between 2011 and 2014, and in January 2015, Plaintiff answered yes.  Id. at 102:23-103:12.

Plaintiff reviewed his paystubs during the inquest.  He said that, when he discovered an error in his paystub, he would inform Ms. Wang and she would help him resolve the issue.  Id. at 48:2-7.  Plaintiff confirmed that the pay records that were produced as Exhibit 4 contained correct information.  Id. at 49:7-20.

### iii. Plaintiff's Post-inquest Submission

The Court permitted Plaintiff to file a written submission "as to any issues discussed" at the damages inquest.  ECF Dkt. Entry 2/22/2023 Minute Entry.[13]

Plaintiff's counsel filed a letter, alleging (1) a minimum wage violation because of a failure to provide updated tip credit notices and a contaminated tip pool, as the manager participated in the pool by failing to provide the busboy with his tip allocation, and (2) a tip misappropriation claim, because Ms. Wang allegedly kept the busboy's tip share.  ECF No. 112.  Plaintiff's counsel argued that Plaintiff is entitled to the difference between the federal minimum

---

[13] After the damages inquest, Rong Xing Inc. filed a letter in which it argued that (1) the Court's grant of summary judgment on the federal claims against Rong Xing Inc. should be extended to Plaintiff's federal claims against the non-appearing Defendants in order to prevent inconsistent results, and that (2) the allegations in Plaintiff's third amended complaint were inconsistent with his testimony at the damages inquest and the deposition taken during the prior summary judgment proceedings.  ECF No. 110.  The Court does not rely on Rong Xing Inc.'s submission.

13

wage and the wage he received, after subtracting the tip credit, because Plaintiff only received notice of the tip credit when he was hired in 2011 and "did not receive copies of his wage notices that he had to sign when his base wage and tip credit changed," and because Ms. Wang had "received a portion of the tip pool" that was meant to be retained by the busboy.  Id. at 2-3. Plaintiff was also entitled to his "respective pro-rated shares of the share [of the tip pool] that was set aside ostensibly" for the busboy.  Id. at 3.[14]

Plaintiff moved for attorney's fees and costs against the non-appearing Defendants.  ECF Nos. 113-115.

In making the arguments on Plaintiff's behalf, Plaintiff's counsel intertwined the claims under federal and state law, although there are meaningful distinctions between the applicable laws.  This report and recommendation is concerned with federal claims only, except as to the supplemental jurisdiction question.

## II.    Standard Of Review

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded.

---

[14] Plaintiff also raised some claims under state law in his post-inquest submission, but the Court does not address these claims in this report and recommendation.  ECF No. 112.

14

See Fed. R. Civ. P. 55(b).  The trial court has the "sound discretion" to grant or deny a motion for default judgment.  See Enron Oil, 10 F.3d at 95.  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and a trial court must "maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard."  Id. at 95–96.

In all cases, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 570).  A plaintiff cannot rely on conclusory allegations, particularly those that simply recite the statutory language.  See, e.g., Yang v. Zhou's Yummy Rest., Inc.,[15] No. 19 Civ. 5203 (CBA) (SJB), 2023 WL 2347885, at *10 (E.D.N.Y. Mar. 3, 2023) (allegation that plaintiff was a barbeque chef without details of plaintiff's work responsibilities was not sufficient to show that plaintiff was employed by an enterprise); Larez v. Hortus NYC Corp., No. 20 Civ. 498 (RRM) (RLM), 2021 WL 1209715, at *3 (E.D.N.Y. Mar. 30, 2021) (recitation of statutory language does not make out the element of enterprise coverage; court cannot assume that a restaurant either had $500,000 in revenue or that the work of a dishwasher or prep cook involved or related to the interstate movement of persons or things); Jiao v. Shang Shang Qian Inc., No. 18 Civ. 5624 (ARR) (VMS), 2020 WL 6370148,

---

[15] The Yang plaintiff was represented by the same attorneys as the present Plaintiff.  The report and recommendation was issued in the Yang case on December 8, 2022, and adopted on March 3, 2023.  ECF Docket Nos. 106, 108.  When the default inquest in this case was held, Plaintiff's counsel was on notice of the need to plead more than conclusory statements about enterprise coverage, but Plaintiff did not address this deficiency during the inquest or in the post-inquest submission.

at *11 (E.D.N.Y. Aug. 11, 2020), report & recommendation adopted, No. 18 Civ. 5624 (ARR) (VMS), 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (where complaint simply listed plaintiffs' titles at defendant restaurant, court stated: "Plaintiffs have failed to meet their most basic pleading obligations, yet they rely on this Court to infer multiple facts in their favor.  This Court declines to infer Corporate Defendant's business, which is necessary but not sufficient to infer that Corporate Defendant engaged in interstate commerce.").[16]  The default process brings special attention to these basic pleading principles: "[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

In considering a motion for a default judgment, courts generally accept all well-pleaded factual allegations of liability.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.").  The Second Circuit has stated:

> A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment.  Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true.

Moulton Masonry, 779 F.3d at 187 (citing Mickalis Pawn Shop, 645 F.3d at 137).  "[I]t is also true that a district court need not agree that the alleged facts constitute a valid cause of action."

---

[16] Plaintiff's counsel in the current action was the plaintiffs' counsel in the Jiao case, so they are well aware of the need to avoid conclusory allegations.

16

Mickalis Pawn Shop, 645 F.3d at 137.  As noted above, the court is obliged only to accept well-pleaded allegations of liability but is not required to credit "mere conclusory statements."  Iqbal, 556 U.S. at 678; see Gunawan, 897 F. Supp. 2d at 83 ("The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.").

In this case, as outlined above, the record contains far more than simply the complaint, as is commonly the circumstance on a default motion.  Instead, Plaintiff offered his deposition testimony in support of his opposition to summary judgment, ECF Nos. 69-11, 69-12; the District Court has made findings of law as to the legal inadequacy of Plaintiff's pleadings and offer of proof; and Plaintiff testified at the inquest.  This record raises the question of how the Court should handle contradictions between the allegations in a complaint and the plaintiff's sworn testimony, as well as the law of the case.  "A fact is not well-pleaded if it is inconsistent with other allegations of the complaint or with facts of which the court can take judicial notice."  Hop Hing Produces Inc. v. Lin Zhang Trading Co., No. 11 Civ. 3259 (NGG) (RLM), 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013).  After a hearing or inquest, the court may accept the plaintiff's testimony over the contradictory allegations in the plaintiff's complaint.  See Avedana v. Casa Ofelia's Bakery LLC, No. 20 Civ. 2214 (DG) (AKT), 2021 WL 4255361, at *10 (E.D.N.Y. Aug. 19, 2021), report & recommendation adopted, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021) (the court "is required to accept [p]laintiff's sworn testimony" over the allegations in the complaint, in the context of a motion for default judgment) (citing Medina v. Angrignon, 15 Civ. 427-A (RJA), 2021 WL 1817046, at *7 (W.D.N.Y. May 6, 2021) (citing Thomas v. Westchester Cty. Health Care Corp., 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002)) ("Faced with [a] confounding contradiction [between plaintiff's allegations in her complaint and

her sworn testimony], the Court has no basis for accepting as true the vague statements in [the] [c]omplaint as opposed to [plaintiff's] sworn testimony. . . ."); Taylor v. Ridley, 904 F. Supp. 2d 222, 233 (E.D.N.Y. 2012) (finding that, when faced with deposition and trial testimony that contradicts a plaintiff's verified complaint, the court must accept plaintiff's sworn testimony)); see Lamaka v. Russian Desserts Inc., No. 18 Civ. 7354 (ILG) (VMS), 2021 WL 2188280, at *4 (E.D.N.Y. Feb. 12, 2021), report & recommendation adopted, 2021 WL 2184870 (E.D.N.Y. May 28, 2021) (holding, where the plaintiff moved for default judgment, that plaintiff's contradictory testimony at a damages inquest was "more credible than the amended complaint because the testimony was given in response to examination by counsel and the [c]ourt under oath"); AB ex rel. EF v. Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) (holding that, in the summary judgment context, when "[f]aced with deposition testimony that contradicts an affidavit and a complaint, this court must accept [the] sworn testimony"). As an alternative approach, a court may conclude that a contradiction between a plaintiff's complaint and other sworn testimony "indicates that the complaint's allegations are not well-pled" and that a default judgment may be denied and the complaint dismissed. J & J Sports Productions, Inc. v. Ferreiras, No. 15 Civ. 6546 (ENV) (SJB), 2018 WL 6168557, at *14 (E.D.N.Y. Nov. 20, 2018) (collecting cases).

### III.    The Fair Labor Standards Act (the FLSA)

In the third amended complaint, Plaintiff alleged two claims under the FLSA,[17] namely, that Defendants failed to pay him the federal minimum wage in violation of the FLSA, and

---

[17] Plaintiff also alleges that, in violation of the NYLL, Defendants failed to pay him the New York State minimum wage; illegally retained his tips; failed to pay him a spread-of-hours pay; illegally claimed his meal credit; failed to provide a time-of-hire wage notice; and failed to

illegally retained his tips in violation of the FLSA.  ECF No. 44 ¶¶ 97-100, 106-109.  These claims were effectively amended in the post-inquest submission to two variations on the minimum wage claim: first, that the non-appearing Defendants should have paid Plaintiff the full federal minimum wage rather than a wage reduced by the tip credit because they did not give him updated notices of the restaurant's tip credit, and second, that because Ms. Wang retained the busboy's tip such that the busboy effectively did not participate in the tip pool, the tip pool was not fairly divided and the non-appearing Defendants should have paid him the full federal minimum wage rather than the wage reduced by the tip credit.[18]  ECF No. 112 at 2-3.

### a.  FLSA Statutes Of Limitations

"The statute of limitations for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'"  Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)).  Because Plaintiff alleges that Defendants' violations of the FLSA were knowing and willful, the three-year limitations period applies.  See Easterly v. Tri–Star Transport Corp., No. 11 Civ. 6365 (VB), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015) ("[A]s [the p]laintiff

---

provide detailed paystubs.  Id. ¶¶ 101-105, 110-130.  The Court does not address the merits of these claims in this report and recommendation.

[18] This change in legal theory may have been made because there is no claim available under the FLSA to recover unlawfully retained tips.  A plaintiff cannot hold the defendants liable under the FLSA for repayment of tips they illegally retained; that claim is available only under the NYLL.  See Chen v. Shanghai Café Deluxe, Inc., No. 16 Civ. 4790 (VF), 2023 WL 2401376, at *9 (S.D.N.Y. Mar. 8, 2023); Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2022644, *7 n.3 (S.D.N.Y. May 2, 2011), report & recommendation adopted, No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (explaining that the FLSA "prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage" and that "[o]nly New York law explicitly prohibits the retention of an employee's tips by individuals other than 'similar' employees").

alleges that [the defendant in default] committed FLSA violations willfully, . . . the three-year federal period applies.") (collecting cases).  Plaintiff filed his complaint on January 8, 2018; the FLSA limitations period therefore extends to January 8, 2015.  ECF No. 1.[19]

### b.  FLSA Coverage

In order for a defendant's commercial activities to be subject to the FLSA, two conditions must be satisfied.  First, its business must constitute an "[e]nterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 203(s).  Second, the associates must be "employees" within the meaning of the FLSA.  The employee must not be someone exempt or "outside the sweep" of the FLSA.  Tony & Susan Alamo Found. v. Sec'y of Lab., 471 U.S. 290, 295 (1985).  The FLSA defines an enterprise engaged in commerce as one that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done . . . not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)-(ii); see Yang, 2023 WL 2347885, at *10; Larez, 2021 WL 1209715, at *3; Jiao, 2020 WL 6370148, at *11.

An individual may be held liable under the FLSA only if the individual is an "employer." See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  The FLSA defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts look to four factors "to determine the 'economic reality' of an employment relationship: 'whether the alleged employer

---

[19] The Court notes that there is an inconsistency between the filing date of January 8, 2018, which is marked in the ECF header of the first complaint filed on the docket, and the date of December 31, 2017, which is marked on the first page of the docket as the "Date Filed".  The Court will discuss the statute-of-limitations calculations based on the date for the filing of the complaint, but notes that the outcome and analysis here would not be different if the filing date were December 31, 2017.

(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Irizarry v. Catsimatidis, 722 F.3d 99, 104-105 (2d Cir. 2013) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  "The underlying inquiry in determining employer status is whether the individual possessed operational control over employees: control over a company's actual operations in a manner that relates to a plaintiff's employment."  Tapia v. Blch 3rd Ave LLC, 906 F.3d 58, 61 (2d Cir. 2018) (internal quotation marks omitted).  "[T]he concept of employment" in the FLSA context "is a flexible one to be determined on a case-by-case basis by review of the totality of the circumstances while emphasizing the economic reality of the parties' relationships."  Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (internal quotation marks omitted).  Although a manager can qualify as an employer under the FLSA, not all employees who provide employee services or customer services qualify as a manager.  See, e.g., Tapia v. Blch 3rd Ave. LLC, No. 14 Civ. 8529 (AJN), 2016 WL 4581341, at *8 (S.D.N.Y. Sept. 1, 2016), aff'd, 906 F.3d 58 (2d Cir. 2018) (reviewing payment records does not qualify supervisor as an FLSA manager); Salinas v. Starjem Restaurant Corp., 123 F. Supp. 3d 442, 450-51 (S.D.N.Y. 2015) (the CEO and majority shareholder of a restaurant was not a FLSA "employer" of the restaurant's staff, although she visited restaurant every day, served as a hostess, and instructed the staff to carry out customer service duties in that role).  As with the enterprise element, a plaintiff cannot rely on conclusory allegations to establish that a person was an "employer" under the FLSA so as to properly plead individual liability, particularly where vague pleadings are "flatly contradicted by plaintiffs' testimony at the inquest hearing."  Espinoza v. La Oficina Bar Corp., No. 20 Civ. 1237 (MKB) (RLM), 2022 WL 987429, at *12 (E.D.N.Y. Mar. 1, 2022), report & recommendation adopted in

relevant part, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022) (citing Chuchuca v. Creative Customs Cabinets Inc., No. 13 Civ. 2506 (RLM), 2014 WL 6674583, at *9 (E.D.N.Y. Nov. 25, 2014) (rejecting complaint's allegations as to joint employers based on plaintiff's testimony at inquest hearing)).

### c.  Minimum Wage And Tip Credits Under The FLSA

The FLSA requires employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week.  See 29 U.S.C. § 206(a)(1).  For every hour worked, the FLSA requires employers to pay employees at least the federal minimum wage, see 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage, see 29 U.S.C. § 218(a).  Thus, "[t]o state a claim for wages under the FLSA, a plaintiff must allege that: (1) [the plaintiff] was the defendant's employee; (2) [the plaintiff's] work involved interstate activity; and (3) [the plaintiff] worked for hours for which [the plaintiff] did not receive minimum or overtime wages."  Suriel v. Cruz, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *10 (S.D.N.Y. Jan. 10, 2022), report & recommendation adopted, 2022 WL 1751163 (S.D.N.Y. May 31, 2022).

The FLSA permits employers in some circumstances to apply a tip credit against the required minimum wage that would otherwise be owed to an employee, such as a waiter, who regularly receives tips.  See 29 U.S.C. § 203(m).  The statute provides:

> (2)(A) In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
> (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996;[20] and

---

[20] The relevant federal minimum wage on that date was $4.25 per hour.  See https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last accessed Mar. 18, 2023).

(ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.[21]

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

(B) An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

29 U.S.C. § 203; see 29 C.F.R. § 531.59(b) ("[A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit.");

Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219 (S.D.N.Y. 2020), report & recommendation adopted, 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

The FLSA permits "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). As noted above, under the FLSA, an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees

---

[21] The relevant wage provisions were:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than—

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
(B) $6.55 an hour, beginning 12 months after that 60th day; and
(C) $7.25 an hour, beginning 24 months after that 60th day;

29 U.S.C. § 206.

who do not "customarily and regularly receive tips."  29 U.S.C. § 203(m).  An employer "loses its entitlement to the tip credit when it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers."  Shahriar, 659 F.3d at 240; see Fonseca v. Dircksen & Talleyrand Inc., No. 13 Civ. 5124 (AT), 2014 WL 1487279, at *2 (S.D.N.Y. Apr. 11, 2014); Wicaksono, 2011 WL 2022644, at *4.  When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether the employee has more than de minimis interactions with customers.  See Chhab v. Darden Restaurants, Inc., No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013) (collecting cases).  As relevant here, restaurant hosts may be tipped employees and participate in tip pools if they have customer interaction.  See 29 C.F.R. § 531.54; Garcia v. La Revise Assocs. LLC, No. 08 CIV 9356 (LTS) (THK), 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) (bartenders, captains and a banquet coordinator could lawfully be included in the tip pool); see also Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 301 (6th Cir. 1998); Chin v. Max One Retail LLC, No. 20 Civ. 2928, 2023 WL 2207393, at *3 (D.N.J. Feb. 23, 2023); Berger v. Perry's Steakhouse of Illinois, LLC, 430 F. Supp. 3d 397, 418 (N.D. Ill. 2019).  Retaining tips "for the house" instead of distributing them to tip pool participants would be a violation of 29 C.F.R. § 531.54.

Under the FLSA, a plaintiff can bring a claim for unpaid minimum wage if an employer takes a tip credit based on an unlawful tip pool.  See Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013).  For example, in Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 241 (2d Cir. 2011), the Second Circuit allowed the putative class of waiters to proceed with a class action based in part on the theory of a minimum wage violation because "the inclusion of a single tip-ineligible employee in that [tip] pool is a violation

with respect to all waiters because every waiter would have shared tips with that ineligible employee."

The FLSA "prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage." Wicaksono, 2011 WL 2022644, at *7 n.3.  Under the FLSA, a plaintiff can bring a claim for tip misappropriation to the extent that the misappropriation of the tips leaves the plaintiff with hourly wages in an amount less than the minimum wage.  See Nakahata, 723 F.3d at 201.  Such an employee can recover the unpaid minimum wages.  A plaintiff who suffered tip misappropriation cannot recover the tips under the FLSA.  See Trejo v. Ryman Hosp. Properties, Inc., 795 F.3d 442, 448 (4th Cir. 2015) (holding that tip credit requirements of § 203(m) "do[] not apply to employees . . . who are seeking only the recovery of the tips unrelated to a minimum wage or overtime claim"); Groeschel v. Casey Key Fish House, Inc., No. 18 Civ. 2500 T-33 (AAS), 2019 WL 1093450, at *4 (M.D. Fla. Feb. 27, 2019).

## IV. Application Of The FLSA To Plaintiff's Claims

### a. FLSA Enterprise Coverage

Plaintiff alleges that non-appearing Defendants were employees of JILI Inc. and Rong Xing Inc., each of which "purchased and handled goods moved in interstate commerce" and "was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year."  ECF No. 44 ¶¶ 9-10, 13-14.  These allegations merely recite the statutory requirements of an enterprise engage in commerce without elaboration.  See Yang, 2023 WL 2347885, at *10; Larez, 2021 WL 1209715, at *3; Jiao, 2020 WL 6370148, at *11; Gonzales v. Gan Israel Pre-Sch., No. 12 Civ. 06304 (MKB) (VMS), 2014 WL 1011070, at *8 (E.D.N.Y. Mar. 14, 2014).  As noted above, the third amended complaint does not include

information as to the operations of the restaurant or as to Plaintiff's duties in the restaurant, to the extent they relate to interstate commerce. Certainly, other than the conclusory allegations as to revenue, the third amended complaint does not set forth information from which the conclusion that the restaurant had revenue of over $500,000 annually could be reached. See Section I(a), supra. As the FLSA coverage element for the non-appearing Defendants is derivative of the restaurant's operations, in the sense that it is based on the participation of the restaurant in interstate commerce, Plaintiff has not adequately pleaded this element in the third amended complaint.

### b. Employment Relationship

#### i. Chun Kit Cheng

Plaintiff alleges in the third amended complaint that Mr. Cheng "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rate and methods of payment, and (4) maintained employment records at Jin Cheng Restaurant." ECF No. 44 ¶ 21. The only fact in the third amended complaint that Plaintiff alleges to support this claim is that Mr. Cheng "hired and fired multiple dishwashers" at the restaurant. Id. ¶ 23. This formulaic recitation of the Carter factors does not amount to an adequately pled allegation that Mr. Cheng was an employer for purposes of the FLSA. See Carter, 735 F.2d at 12 (factors "to determine the 'economic reality' of an employment relationship: 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'").

26

Plaintiff's inquest testimony undermines the third amended complaint as to Mr. Cheng's role at Jin Cheng Restaurant. During the inquest, at first, Plaintiff testified that Mr. Cheng "supervised employees" in the dining area of the restaurant. ECF No. 111 at 19:19-23. When asked by the Court if Mr. Cheng "supervise[d] the workers" in the dining area, Plaintiff then responded "[n]o." Id. at 23:7-9. Plaintiff testified that Mr. Cheng occasionally "manage[d] the front" when the restaurant was busy by "tak[ing] care of the customer[s], tak[ing] care of the register . . . and also mak[ing] supply purchases," but that his involvement was largely in the kitchen area of the restaurant. Id. at 22:15-23:6, 23:10-19. When asked who was responsible for handling payment to the employees or setting work schedules, Plaintiff responded that Ms. Wang handled all those tasks. Id. at 24:10-14, 45:21-22. Plaintiff also testified that Ms. Wang had supervised him during his employment in the dining area at Jin Cheng Restaurant. Id. at 21:9-10, 21:20-22:2. Plaintiff confirmed that the purported managers (other than Ms. Wang) did not have the power to hire or fire employees. Id. at 40:7-9. Plaintiff's sole allegation in the complaint that Mr. Cheng hired and fired restaurant dishwashers, ECF Nos. 44 ¶ 23, is thus contradicted by his testimony that Ms. Wang was the only person who could hire and fire employees. ECF No. 111 at 24:3-8; Carter, 735 F.2d at 12.

The Court therefore respectfully recommends finding, based on Plaintiff's testimony, that Mr. Cheng was not an FLSA employer.[22]

### ii.  Jiali Wang

Plaintiff's third amended complaint alleges that Ms. Wang paid the restaurant staff, determined worker schedules and fired Plaintiff. ECF No. 44 ¶¶ 16-19. Plaintiff testified that

---

[22] The analysis below as to the other reasons Plaintiff's federal claims should be dismissed applies to both Mr. Cheng and Ms. Wang.

Ms. Wang "supervised employees" in the dining area of the restaurant, ECF No. 111 at 19:19-23; supervised Plaintiff personally, id. at 21:9-10; "ma[de] all the schedules for the worker[s]," id. at 22:10-14; and was in charge of handling employee wages and setting Plaintiff's work schedule. Id. at 24:10-14, 45:21-22.  Plaintiff has thus sufficiently pleaded that Ms. Wang qualified as his employer for the purposes of FLSA liability.  See Carter, 735 F.2d at 12.

### c.  FLSA Minimum Wage And Tip Allocation Claims

#### i.  Notice Of Tip Credit

In the third amended complaint, Plaintiff alleges that he "was only given written notice of his wage rate and the tip credit . . . when he was hired on or about July 6, 2011," and was not given renewed notices of the tip credit when his wage changed over the course of his employment.  ECF No. 44 ¶¶ 70-71.  In his post-inquest submission, Plaintiff argues that because he "did not receive copies of his wage notices" informing him of the tip credit "when his base wage and tip credit changed," he is entitled to the difference between his post-tip credit hourly wage and the federal minimum wage.  ECF No. 112 at 2-3.

 The only minimum wage claim that Plaintiff can raise based on the allegedly unlawful tip credit is that for the period January 8, 2015 through December 30, 2015, during which he claims that he was underpaid each hour by $2.25.  As set forth above, Section I(a), supra, for his other tip-related claims under federal law, they either fall outside of the statute of limitations, as they cover a period more than three years prior to the filing of his complaint, or, even with the tip credit, Plaintiff was paid at least the federal minimum wage from December 31, 2015 onward.

As to the one year for which Plaintiff can allege under the FLSA that Defendants improperly took a tip credit, Plaintiff bases his claim on the argument that he did not receive a new tip notice when his hourly rate changed from $8.00 with a $3.00 tip credit in 2014 to $8.75

with a $3.75 tip credit in 2015.  ECF Nos. 44 ¶¶ 65-66; 112 at 2-3.  Plaintiff's claim fails because it is based on a claim to a right not available under the FLSA.

First, Plaintiff alleges in the third amended complaint that he received the only written notice of the tip credit in July 2011.  ECF No. 44 ¶¶ 70-71.  At the inquest, however, Plaintiff offered Exhibit 2, which proves that Plaintiff received notices informing him of the tip credit on February 1, 2015; January 1, 2016; and January 1, 2017.  Plaintiff thus received notice in February of the only year (2015) about which he can raise an FLSA claim as to the lack of a tip credit notice.  (This is because, as to the other years within the period of the FLSA statute of limitations, Plaintiff was paid at or above the federal minimum wage.)  In addition, Plaintiff received weekly pay statements beginning February 2015, each of which shows that the restaurant was taking a tip credit against his wages.  Thus, even if Plaintiff's allegations in the third amended complaint were to make out a claim, it would be for only January 8, 2015 through early February 2015.

Second, Plaintiff pleads that he received a tip notice upon his hiring in 2011.  ECF No. 44 ¶¶ 70.  He confirmed the receipt of the 2011 notice during his testimony during the inquest.  ECF No. 111 at 16:20-17:3.  In fact, his attorney offered Exhibit 2 during the inquest, which contains the 2011 notice.  Id.  Although Plaintiff claims that Defendants were obliged to send additional notices when his wages and tip credit changed, ECF No. 112 at 3, the FLSA does not contain any requirement that notices be repeated.  See 29 U.S.C. § 203(m)(2)(a)(ii); 29 C.F.R. § 531.59 ("[A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit.").  In his post-inquest submission, Plaintiff cites only to New York law to support his argument that every increase in his wage required a new notice of the tip credit.  ECF No. 112 at 3.

Based on either or both the third amended complaint and the inquest testimony, Plaintiff failed to make out a claim for non-payment of the federal minimum wage because his employer was entitled to take the tip credit based on the notice given in 2011. The Court respectfully recommends that the FLSA minimum wage claim based on the lack of repeated tip credit notices be denied.

### ii. Ms. Wang's Alleged Participation In The Tip Pool

Plaintiff offers a second theory as to why he was entitled to be paid the federal minimum wage without a tip credit reduction. He alleges that Defendants were not eligible to take a tip credit because Ms. Wang purportedly took money from the tip pool, ostensibly meant as a tip for the busboy, but instead retained the money for herself and paid the busboy a flat rate of $600 per week instead. ECF No. 44 ¶¶ 80-84. In his post-inquest submission, Plaintiff argues that because Ms. Wang, "as either an employer or a manager, received a portion of the tip pool," Defendants could not lawfully claim a tip credit. ECF No. 112 at 3.

Plaintiff also frames this claim as a tip misallocation claim. He claims that he is entitled to the "respective pro-rated shares of the share [of the tip pool] that was set aside ostensibly" for the busboy. ECF No. 112 at 3.

Plaintiff's sworn deposition testimony and inquest testimony contradict Plaintiff's third amended complaint and argument. During the inquest, Plaintiff testified that he knew that Ms. Wang instructed the staff to take the busboy's share from the tip pool and "put [it] in a drawer," but he did not testify that Ms. Wang would keep the busboy's share. ECF No. 111 at 36:2-5, 41:6-15. Plaintiff's deposition testimony, which he submitted on the summary judgment motion between Plaintiff and Rong Xing Inc., included his testimony that the busboy's tip share "was distributed," but he had "never seen [the busboy] take" his tips. ECF No. 69-11 at 100:12-16.

Plaintiff also testified that he had no personal knowledge about how much the busboy was paid, and he had never seen the busboy's wage statements. Id. at 97:10-98:2. Thus, Plaintiff did not know whether the busboy did or did not receive his portion of the tip pool. This contradicts the claim that the manager contaminated the tip pool by keeping the busboy's tip for herself. It also defeats the misappropriation claim because Plaintiff admitted that he had no basis upon which to believe that the busboy was not paid his tips, such that he could not state that the tip pool was misallocated.

The District Court came to the same conclusion in granting Rong Xing Inc.'s motion for summary judgment on the claim that the company, via Ms. Wang, conducted an illegal tip pool. The District Court concluded that "[P]laintiff d[id] not actually know that" the busboy "never collected his tips and there's no other evidence to suggest that [the busboy] never collected his tips." ECF Dkt Entry 3/24/2021 Order (Tr.) at 9:9-12. Plaintiff did not add any information to the record during the inquest that would contradict this conclusion. Under the law of the case doctrine, the Court is unwilling to revisit this well-supported conclusion. See In re Peters, 642 F.3d 381, 386 (2d Cir. 2011) ("The law of the case doctrine, although not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons, including, inter alia, the need to correct a clear error or prevent manifest injustice.").

I respectfully recommend that Plaintiff's FLSA minimum wage claim based on the alleged misappropriation of the busboy's portion of the tip pool be denied based on Plaintiff's testimony and the law of the case.

### iii.   Other "Managers'" Alleged Participation In The Tip Pool

During the inquest, Plaintiff testified that several other unnamed "managers" took part in the tip pool.  ECF No. 111 at 38:7-13, 39:21-40:6.  During the summary judgment proceedings and damages inquest, Plaintiff alleged that another manager of Jin Cheng Restaurant participated in the tip pool and rendered Defendants ineligible to take a tip credit.  ECF Nos. 69-13 ¶ 34, 111 at 38:7-13, 39:21-40:6.  This claim should be rejected.

In his deposition and in connection with the summary judgment motion, Plaintiff claimed that an unspecific manager named "Ben" participated in the tip pool.  ECF No. 69-13 ¶ 34.  This allegation was not included in the third amended complaint, such that it cannot be considered and credited on this default judgment motion.  See Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007) ("[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages not claimed in the complaint.").  The District Court already denied this claim as to the restaurant in the summary judgment motion because it was not contained within the third amended complaint.  ECF Dkt. Entry 3/24/2021 Order (Tr.) at 9:18-10:3.

In addition, during the inquest, Plaintiff testified about the "managers" and their alleged participation in the tip pool.  Plaintiff's inquest testimony made clear that these unnamed individuals were not managers or employers under the FLSA.  For example, these employees "help[ed] . . . with the customer[s]" by "tak[ing] orders," by "greeting customers," by "maintain[ing] and check[ing] the quality of the meals" or by organizing "the menu for . . . wedding parties."  ECF No. 111 at 38:7-13, 39:21-40:6.  Plaintiff confirmed that these purported

managers (other than Ms. Wang) did not have the power to hire or fire employees.  Id. at 40:7-9.

They "served to help [Ms.] Wang" and would tell Plaintiff "to go to a particular section of the

dining area to work."  Id. at 42:3-19.  In response to the Court's inquiry as to whether these

employees gave "any other directions other than . . . the work and food flow," Plaintiff replied

that "basically that's it."  Id. at 45:23-46:2.  Plaintiff confirmed that these employees served as

the "maître d' for the restaurant."  Id. at 39:2-4.  Under the case law discussed above, Section

III(c), supra, hosts or maître d's with customer contact may lawfully participate in a restaurant's

tip pool.  See 29 C.F.R. § 531.54; Garcia, 2011 WL 135009, at *5; see also Kilgore, 160 F.3d at

301; Chin, 2023 WL 2207393, at *3; Berger, 430 F. Supp. 3d at 418.

I respectfully recommend that the claim of tip pool dilution based on "managers"

allegedly participating in the tip pool be rejected because these employees were not managers or

employers for FLSA purposes.

### iv.  Meal Credit

Plaintiff argues that because he did not often eat the meals provided, he should not have

been charged a meal credit.  See ECF No. 44 ¶¶ 58-59.  Under the FLSA, an employee's wage

"includes the reasonable cost . . . to the employer of furnishing such employee with board . . . if

such board . . . [is] customarily furnished by such employer to his employees."  29 U.S.C. §

203(m).

Plaintiff's post-inquest submission did not ask for any damages based on the allegedly

improperly taken meal credit.  See ECF No. 112.  The Court deems this claim to be waived.

In addition, the restaurant paperwork from February 2015 onward shows that the

restaurant did not take a meal credit.  During the inquest, Plaintiff confirmed that the information

included in Exhibits 4 and 5 was correct, and that he had the opportunity to review the

information at the time it was made and correct any mistakes.  ECF No. 111 at 52:23-53:10, 54:1-7, 57:21-58:9.  Exhibits 4 and 5 from the inquest report a meal credit, but they show that the restaurant did not deduct it from Plaintiff's wages.

During the inquest, the Court asked Plaintiff if, at any point, his employers had "charge[d] [Plaintiff] for or take[n] a credit for meals that were provided to [Plaintiff] at the restaurant."  Id. at 88:18-20.  Plaintiff responded, "I actually don't know."  Id. at 88:21.  When asked by counsel for Rong Xing Inc. if a meal credit was deducted from Plaintiff's wages between 2011 and January 2015, Plaintiff was unable to answer.  Id. at 102:6-8.  When asked by Plaintiff's counsel and the Court if the meal credit was deducted from his wages between 2011 and January 2015, Plaintiff answered yes.  Id. at 102:23-103:12.  This contradictory testimony and documentary evidence supports the conclusion that Plaintiff's meal credit claim is not well-pleaded.[23]

I respectfully recommend that the FLSA meal credit claim be denied.

---

[23] If the District Court were to disagree that Plaintiff waived this claim for damages and that it was contradicted by his testimony and documentary evidence, this Court would further respectfully recommend that Plaintiff's claim for unpaid minimum wages based on an unlawful meal credit be denied.  There is a split among courts as to whether the Department of Labor's interpretation of the statute and related regulation have properly added a voluntary acceptance requirement to an employer taking a meal credit.  Judge Wood in the Southern District of New York recently persuasively discussed the question in detail in Rahman v. Limani 51, LLC, No. 20 Civ. 6708 (KMW), 2022 WL 3927814, at *4-5 (S.D.N.Y. Aug. 31, 2022).  If the Court were to find it necessary to determine the merits of Plaintiff's meal credit claim under the FLSA, I would respectfully recommend that the Court adopt the analysis in Rahman, such that Defendants were entitled to take a meal credit because it is not disputed that they provided Plaintiff with the meals for which the credits were taken.

### d.  Attorney's Fees

Plaintiff moves for attorney's fees and costs under the FLSA at ECF Nos. 113-115.[24] The FLSA allows courts to award prevailing plaintiffs reasonable attorney's fees and costs.  See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  In this case, because I recommend that Plaintiff's motion for a default judgment as to the federal claims be denied and that his federal claims be dismissed, if the District Court agrees, Plaintiff would not be a prevailing party under the FLSA such that he is not entitled to attorney's fees and costs.  I therefore respectfully recommend that the District Court deny the motion for attorney's fees and costs under the FLSA at ECF Nos. 113-115.

### V.    Plaintiff Should Not Be Granted Leave To Amend His Federal Claims Again

When a plaintiff fails to allege a well-pleaded claim such that a motion for a default judgment is not successful, courts often grant leave for the plaintiff to replead the claims. "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend '[should [be]] . . . freely give[n] . . . when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)).  The court may deny leave for a

---

[24] In the January 31, 2023 report and recommendation, the Court noted that Plaintiff's motion for default judgment included a request for attorney's fees encompassing hours spent on work unrelated to the instant motion and the non-appearing Defendants.  ECF No. 108 at 13.  The Court permitted Plaintiff to file a revised attorney's fee application in connection with the default motion and inquest.  ECF Dkt. Entry 2/22/2023 Minute Entry.  Despite these specific instructions, Plaintiff's revised attorney's fee motion at ECF Nos. 113-115 still requests compensation for attorney's work unrelated to the default and the non-appearing Defendants, such as attorney's fees for the opposition to the summary judgment motion and other litigation with the appearing Defendant.  ECF No. 114-1.

good reason, such as futility, bad faith, undue delay or undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. 178, 182 (1962).

In this case, however, I respectfully recommend that such leave be denied for several reasons. First, Plaintiff has already filed four complaints such that he has had sufficient opportunity to file a well-pleaded complaint. See Section I(a), supra. Second, Plaintiff has already undertaken dispositive motion practice with the corporate defendant, and the Court has ruled on some of these same claims, such that Plaintiff was on notice of the complaint's deficiencies, see Section I(b), supra, but Plaintiff did not move for leave to amend the complaint to correct the deficiencies. See Darnis v. Raytheon Techs. Corp., No. 3:20 Civ. 1171 (SRU), 2022 WL 4599200, at *21 (D. Conn. Sept. 30, 2022) (citations omitted) (denying motion to replead where plaintiffs had already been permitted to replead after seeing defendants' motion to dismiss, but they did not cure the deficiencies). Third, Plaintiff has testified twice as to the substance of his minimum wage claims and has given evidence that shows that he does not have a viable minimum wage claim under the FLSA. Repleading need not be allowed when the problem with a pleading is a substantive one such that repleading would be futile. See IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015). Here, Plaintiff has twice testified contrary to the substance of his complaint's minimum wage claims as to the tip notice and the tip pool; Plaintiff could not replead in a way that contradicts his sworn testimony. Fourth, in his testimony, Plaintiff confirmed that he did not provide his attorney with information that was included in the complaints about the restaurant, yet counsel proceeded with the case; this raises questions as to the good faith with which these claims were brought. See, Section I(b), supra.

36

## VI.    Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  A district court can decline to exercise supplemental jurisdiction over a plaintiff's state law claims after properly dismissing the plaintiff's federal claims.  See Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (finding no abuse of discretion in the district court's decision to decline exercising supplemental jurisdiction over a plaintiff's state law claims once federal claims were properly dismissed).  In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  Courts often decline the exercise of supplemental jurisdiction over state wage-and-hour claims where all of a plaintiff's FLSA claims have been dismissed.  See In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (affirming the district court's decision to decline exercising supplemental jurisdiction over state law claims after dismissing FLSA claims); Wong v. City of New York, No. 19 Civ. 6900 (RPK) (VMS), 2021 WL 768136, at *6 (E.D.N.Y. Feb. 26, 2021) (dismissing state law claims where federal claims had been dismissed and plaintiff failed to "articulate[] any reason to exercise supplemental jurisdiction"); Li v. Li Qin Zhao, 35 F. Supp. 3d 300, 301 (E.D.N.Y. 2014) (declining to exercise supplemental jurisdiction over a state law claim where the court granted summary judgment in favor of defendants on plaintiff's FLSA claim).

I respectfully recommend that the District Court enter an order to show cause as to why the District Court should not decline to exercise supplemental jurisdiction over the remaining

state law claims and why the action should not be dismissed without prejudice for want of subject matter jurisdiction.  See Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82 (2d Cir. 2018) (court should give parties an opportunity to be heard as to whether the court should exercise its discretionary authority to decline to exercise supplemental jurisdiction; it was abuse of discretion to decline to exercise supplemental jurisdiction sua sponte without giving the parties an opportunity to be heard); Shahriar, 659 F.3d at 245.  Although dismissal may well be appropriate under the circumstances here, the parties are nonetheless entitled to receive "notice and an opportunity to be heard, for example, in the form of an order to show cause why his complaint should not be dismissed."  Phillips v. Long Island R.R. Co., No. 22-123, 2023 WL 2317231, at *1 (2d Cir. Mar. 2, 2023).  "Such notice would have also given [d]efendants an opportunity to raise additional arguments in favor of dismissal."  Id.

If the District Court retains jurisdiction over this action, the Court respectfully requests that the District Court re-refer the motion for a default judgment for the Court to prepare a report and recommendation as to the state law claims against the non-appearing Defendants.

## VII.    Conclusion

I therefore respectfully recommend that the District Court deny the motion for default judgment with respect to Plaintiff's FLSA claims, and that the Court dismiss the federal claims with prejudice.

I respectfully recommend if the District Court agrees that Plaintiff's motion for a default judgment as to the FLSA claims should be denied and the federal claims should be dismissed, that the initial report and recommendation at ECF No. 108 be marked withdrawn as moot in light of the resolution of the federal claims before the Court; that Plaintiff's motion for attorney's fees and costs at ECF Nos. 113-115 be denied because Plaintiff would not be a prevailing plaintiff entitled to fees and costs; and that the District Court enter an order to show cause as to why the

District Court should not decline to exercise supplemental jurisdiction over the remaining state law claims and why the action should not be dismissed without prejudice for want of subject matter jurisdiction.

If the District Court retains jurisdiction over this action, the Court respectfully requests that the District Court re-refer the motion for a default judgment for the Court to prepare a report and recommendation as to the state law claims against the non-appearing Defendants.

### VIII.   Objections

This supplemental report and recommendation will be filed electronically.  The Court will mail this report and recommendation each to Ms. Wang and Mr. Cheng at 64-65 Cloverdale Blvd., Oakland Gardens, New York 11364.

Written objections to this supplemental report and recommendation must be filed with the Clerk of the Court within the time permitted after service of the supplemental report and recommendation, and in accordance with the Individual Rules of the District Judge.  Failure to file objections within fourteen days will preclude further review of this supplemental report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F. 4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision" (internal citation & quotations omitted)).

Dated:  Brooklyn, New York
        March 19, 2023

*Vera M. Scanlon*
_____
        VERA M. SCANLON
        United States Magistrate Judge

39